39 F.3d 1183
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Bennie F.L. WARD, Plaintiff-Appellant,
v.
The UNIVERSITY OF TENNESSEE, John Quinn, Individually and as
Chancellor of the University, Larry Ratner, Individually and
as Dean of the College of Liberal Arts of the University,
and William Bugg, Individually and as Physics Department
Head at the University, Defendants-Appellees.
 No. 93-6250.
 United States Court of Appeals, Sixth Circuit.
 Nov. 1, 1994.
 
 Before: MARTIN, KRUPANSKY, and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff Bennie Ward brought a Title VII claim against the University of Tennessee and three members of its administration for racial discrimination in employment under 42 U.S.C. Secs. 2000e-2000e-17 He appeals the district court's granting of defendants' Motion for Summary Judgment. Because Ward failed to show that the University treated him worse than other similarly situated faculty members, we affirm.
 
 
 2
 In 1985, the University of Tennessee at Knoxville initiated a plan to recruit black faculty. Dr. William Bugg, the Chairman of the Department of Physics, recruited Ward, who is black, as an associate professor of physics. Dr. Ward's appointment began on September 1, 1986. Ward was awarded tenure in 1988, and promoted to full professor in August 1990. He is currently paid $44,370, and is the fifth highest paid full professor of the twenty-two regular professors in his department.
 
 
 3
 According to Ward, the University pays him less than similarly situated white faculty members. Ward claims both an international reputation in particle physics, and an impressive record in obtaining funding from sources outside the University. He asserts that he should have been hired as a full professor in 1986 instead of as an Associate Professor, and that he was not so hired because he was black. He also claims that he is similar in skill and background to other professors who receive higher salaries. Ward contends that white faculty salaries are set by calculating a certain number of dollars per publication and per amount of outside funding raised by the faculty member. He asserts that, if his salary had been set according to these criteria, as he claims other professors' salaries are, his salary would be higher than it is now.
 
 
 4
 The University denies that Ward is paid less than similarly situated white faculty members. The University supported its argument with evidence showing that, when hired, Ward was the third highest paid of eight full-time Associate Professors, and was paid more than three full professors at that time. The University's evidence also shows that Ward's annual salary increases exceeded the average increase for physics professors during all but one of his years with the University. Finally, the University's evidence indicates that Ward's current salary is more than four other physics professors, all of whom have more teaching experience than Ward and have been with the University longer. The University denied that faculty salaries are computed on a per publication or per outside funding dollar basis, as Ward asserts.[1] The University also offered specific nondiscriminatory reasons for its salary decisions.
 
 
 5
 Summary judgment is properly granted against a party who fails to make a sufficient showing to establish the existence of an element essential to the party's claim, on which the party will have the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). In a Title VII action, the plaintiff initially bears the burden of showing by a preponderance of the evidence that the defendant acted to affect plaintiff's employment adversely and that the plaintiff is a member of a protected class, was qualified for the position or privilege, and was treated differently from similarly situated individuals of a different race. McDonnell Douglas v. Green, 411 U.S. 792, 802 (1973); see also Ang v. Proctor & Gamble Co., 932 F.2d 540, 548 (6th Cir.1991). If a plaintiff satisfies this requirement, the burden shifts to the defendant to provide a legitimate nondiscriminatory reason for the adverse employment decision. West v. Fred Wright Construction Co., 756 F.2d 31, 33 (6th Cir.1985). If the defendant offers a legitimate nondiscriminatory reason, the burden shifts back to the plaintiff to establish that the reason is pretextual and that intentional discrimination was the true basis for the decision. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 253 (1981) (citing McDonnell Douglas, 411 U.S. at 804); Wilson v. Firestone Tire & Rubber Co., 932 F.2d 510, 514 (6th Cir.1991) (age discrimination).
 
 
 6
 Ward asserts that comparisons of salary per article and salary per outside funds raised would indicate he is paid less than similarly situated colleagues.[2] The University has produced numerous charts and comparisons that refute this assertion. In response, Ward raises objections to the University's methodology. Ward does not offer comparisons of his own to support his assertions, nor does he provide testimony from compensation authorities or any other support for his arguments. Ward's own opinions about proper compensation comparison technique, even if sincerely held, are not particularly probative. The only evidence Ward produced to support his claim was handwritten notes prepared by Ward based on Ward's own information about his colleagues' salary and outside funds raised.
 
 
 7
 Nevertheless, even if the court accepted the claim that Ward has produced evidence that raises a genuine issue of material fact under McDonnell Douglas, the University has provided well-documented reasons for its salary decisions. Ward has not produced any evidence to show that these explanations are pretextual, and that racial discrimination was instead a determinative factor in the University's salary decisions. Wilson, 932 F.2d at 514. As the district court notes in its Order, "[t]he plaintiff has offered no evidence to the contrary other than his personal opinion that racism is the motivating factor. While this could, in fact, be the case, in the complete absence of any evidence, the Court cannot draw this conclusion."
 
 
 8
 Ward simply has not provided evidence to state a prima facie claim of racial discrimination, nor has he produced evidence to rebut the University's explanations for its salary decisions. Therefore, the district court properly granted the University's Motion for Summary Judgment, and the dismissal is
 
 
 9
 AFFIRMED.
 
 
 
 [1]
 Even so, the University attempts to calculate what faculty are paid per dollar of external funding they raise. These calculations show no correlation between salary and external funding obtained by a faculty member. The University provides similar calculations for publications that also show no correlation between salary and publication volume
 
 
 [2]
 To establish that another employee is similarly situated to him, a plaintiff must show that both employees are similar in all respects. Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir.1992)