964 F.Supp. 272 (1997)
Howard D. HAMLYN, on his own behalf and on behalf of all those similarly situated, Plaintiff,
v.
ROCK ISLAND COUNTY METROPOLITAN MASS TRANSIT DISTRICT, and Loren A. Dussliere, Cecil L. Hickman, Robert E. Jensen, Laurence W. Lorensen, and John R. Hunt, in their individual capacities, Defendants.
No. 97-4015.
United States District Court, C.D. Illinois.
April 29, 1997.
*273 Harvey Grossman and Roger A. Leishman, Roger Baldwin Foundation of ACLU, Inc., Chicago, IL, for plaintiff.
Bernard C. Gillman, Gillman Konecky & Norman, Rock Island, IL, for defendants.

ORDER
McDADE, District Judge.
Before the Court is Plaintiff's Motion For Preliminary Injunction [Doc. # 3] and Plaintiff's Supplemental Memorandum In Support of Motion for Preliminary Injunction [Doc. # 14].

BACKGROUND
On February 20, 1997, Plaintiff Howard D. Hamlyn ("Hamlyn") filed a Complaint on his own behalf and on behalf of all those similarly situated alleging that Defendants had violated the ADA, the Rehabilitation Act, and the Equal Protection Clause of the Fourteenth Amendment by excluding persons with AIDS from its Metro Link Reduced Fare Program.
This program entitles eligible recipients to pay a reduced fare on Metro Link buses. The application form explicitly states: "WHO DOES NOT QUALIFY: [] Applicants whose sole disability is [] AIDS." Once again, on the physician statement portion of the form, it states, "Applicants do not qualify if their sole disability is [] AIDS."
Accompanying the Complaint is a motion for preliminary injunction. Attached to this motion is Hamlyn's affidavit in which he states in pertinent part, "I suffered and continue to suffer emotional distress as a result of my exclusion from the Reduced Fare Program."

ANALYSIS
In order to obtain a preliminary injunction, the movant must show: (1) that the case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that the movant will suffer irreparable harm if the injunction is not granted. Storck USA, L.P. v. Farley Candy Co., 14 F.3d 311, 313-14 (7th Cir. 1994). Only if these three conditions are met must the Court proceed to balance the harm to the movant if the injunction is not issued against the harm to the defendant if it is issued improvidently. Id. at 314. In addition, the court must consider the public interest in its decision. Id.
In its Order of March 21, 1997, the Court found that an allegation of constitutional harm, such as an equal protection violation, was not sufficient in and of itself to establish the elements of irreparable harm or an inadequate remedy at law where the ultimate remedy would only be monetary in nature. The general rule is that monetary loss does not constitute an irreparable injury because a successful plaintiff can be adequately compensated at the conclusion of the litigation. Classic Components Supply, Inc. v. Mitsubishi Elecs. Am., Inc., 841 F.2d 163, 164-65 (7th Cir.1988); Chicago Typographical Union, No. 16 v. Chicago Newspaper Publishers' Assoc., 620 F.2d 602, 604 (7th Cir.1980). However, the Court allowed Plaintiff an opportunity in which to show that *274 he was so poor that he would be denied equal access to the Metro Link bus line.
Plaintiff declined the Court's invitation and instead has attempted to show that "the stigma and psychological injury inflicted upon him by defendants' constitutional violations will cause him to suffer irreparable harm if an injunction is not issued." Because every constitutional violation arguably causes some psychological injury to the victim, this is just another way of recasting Plaintiff's original argument that a constitutional violation in and of itself must result in irreparable harm. Once again, the Court rejects such an argument.
Plaintiff cites to three cases to support his argument that a stigma which causes psychological injury is sufficient to establish irreparable harm and an inadequate remedy at law. While each of these cases mentions the stigma and psychological harm suffered by the plaintiffs, they rely on a decidedly different ground for their actual holdings, namely, that the defendant's unconstitutional actions would segregate the plaintiffs from their work or school environment.
In Chalk v. United States District Court Central Dist. of Cal., 840 F.2d 701, 703 (9th Cir.1988), the Department of Education reassigned the plaintiff from his teaching position to an administrative position when it discovered that he had AIDS. The plaintiff moved for a preliminary injunction on the basis that the defendant had violated the Rehabilitation Act of 1973, but the trial court denied the motion. Id. at 704. The Ninth Circuit reversed the trial court's denial of the plaintiff's motion for preliminary injunction. Id. at 709. In finding that there was irreparable harm, the court explained:
Chalk's original employment was teaching hearing-impaired children in a small-classroom setting, a job for which he developed special skills beyond those normally required to become a teacher. His closeness to his students and his participation in their lives is a source of tremendous personal satisfaction and joy to him and of benefit to them. The alternative work to which he is now assigned is preparing grant proposals. This job is "distasteful" to Chalk, involves no student contact, and does not utilize his skills, training or experience. Such non-monetary deprivation is a substantial injury which the court was required to consider.
Id.
While the court also discussed the stigma associated with AIDS and other infectious diseases, id. at 710, it only mentioned this in passing and did not base its finding of irreparable harm upon it. The court further noted that the "plaintiff is not claiming future monetary injury; his injury is emotional and psychological  and immediate." Id. This is consistent with the court's previous finding that the plaintiff's total separation from his students constituted a substantial injury affecting his quality of life. Id. at 709.
In Doe v. Dolton Elementary Sch. Dist., 694 F.Supp. 440, 442 (N.D.Ill.1988), the defendant school district excluded a student with AIDS from his regular education classes and extracurricular activities and instead offered him a homebound education. The student filed a motion for preliminary injunction based upon the Rehabilitation Act of 1973 and a state law guaranteeing students the right to an equal education. Id. The court granted the motion. In finding irreparable harm, the court noted that the student would be deprived of "group interaction, class discussion, and learning different points of view" and would not have access to a "library, chemistry lab or biology lab." Id. at 446-47.
The court also relied on testimony by a staff psychologist that the student would suffer self-esteem problems by being separated from the school which would affect his social and emotional development. Id. at 447. The court noted that "[t]he stigma attached to Student # 9387 is even greater considering the increased negative importations associated with AIDS.... [I]f AIDS-infected children are segregated, they will suffer the same feelings of inferiority the Supreme Court sought to eradicate in Brown 34 years ago." Id.
Similarly, in Ray v. School Dist. of Desoto County, 666 F.Supp. 1524, 1534-35 (M.D.Fla. 1987), three hemophiliac children were denied access by the school board to a normal, *275 integrated classroom and placed in segregated schooling or homebound instruction. There was opinion testimony in the record that this separation was causing irreparable injury to the boys' mental well-being and educational potential. Id. at 1535. The district court granted the students' motion for preliminary injunction based on the Rehabilitation Act, state statutory requirements, and the state and federal constitutions. Id. Once again, there was a complete and unequivocal denial of access to an integrated classroom.
Each of these cases is clearly distinguishable from the instant case for one simple reason: those plaintiffs were completely denied equal access to their work or school, while here, Plaintiff need only pay an additional bus fare to have equal access to Metro Link buses. Other equal protection cases bear out this same distinction. See, e.g., Henry v. Greenville Airport Comm'n, 284 F.2d 631, 632 (4th Cir.1960) (irreparable harm found where African-American passengers were being required to stay in a separate waiting room than other passengers); Adams v. Baker, 919 F.Supp. 1496, 1504-05 (D.Kan.1996) (irreparable harm found where female plaintiff could not compete on school wrestling squad and would miss opportunities to "compete, practice and learn the sport of wrestling" causing her to fall behind developmentally); cf. Pollis v. New Sch. for Social Research, 829 F.Supp. 584, 601 (S.D.N.Y. 1993) (no irreparable harm found where teacher was forced to retire from his full-time tenured position and take a part-time adjunct professor position; employer's action did not separate teacher entirely from the school).
A denial of equal protection rights may be more or less serious depending on other injuries which accompany such deprivation. Constructors Assoc. of Western Penn. v. Kreps, 573 F.2d 811, 820 n. 33 (3d Cir.1978); Oshiver v. Court of Common Pleas, Court Adm., 469 F.Supp. 645, 653 (E.D.Pa.1979). This case falls on the less serious end of the continuum because Plaintiff can avoid any forced segregation by simply paying a slightly increased fare on Metro Link buses than those whom Defendant presently considers "disabled." If Plaintiff ultimately succeeds on his claims, he can easily be compensated for his losses at the conclusion of this litigation.
The alleged "stigma" in this case is quite different from the stigma articulated in Chalk, Doe and Ray. In those cases, the stigma centered around the uninformed and unreasonable belief that someone with a communicable disease such as AIDS must be segregated from the rest of the population for fear that they will casually spread the disease to others. In this case, however, the only stigma is that persons with AIDS are not being considered "disabled" for purposes of Metro Link's reduced fare program. The Court presumes that many people, including many of those who carry the HIV virus, would not consider this to be a stigma at all. It would be ironic to discover that someone with AIDS should suffer psychological harm simply because others treat them as a normal member of the population.
Plaintiff has also failed to present any credible medical evidence of psychological harm. Compare Pollis, 829 F.Supp. at 597 (no irreparable harm found where plaintiff failed to present any medical or psychological evidence to support claim of emotional distress from forced retirement) with Oshiver, 469 F.Supp. at 653 (irreparable harm found where plaintiff presented credible evidence of "nervous and emotional problems brought on by her dismissal").
In the employment context, the cases even go so far as to say that an unlawful separation from one's job will not lead to a finding of irreparable harm except in an "extraordinary situation." Sampson v. Murray, 415 U.S. 61, 92 n. 68, 94 S.Ct. 937, 954 n. 68, 39 L.Ed.2d 166 (1974). Thus, "the emotional distress normally suffered upon the loss of a job will not support the issuance of preliminary relief," Remlinger v. State of Nevada, 896 F.Supp. 1012, 1017 (D.Nev.1995), and "the resultant non-economic effect upon the employee of the employer's adverse action must have about it an extra dimension which distinguishes the case from those of all similarly situated employees." Pollis, 829 *276 F.Supp. at 601.[1] When compared to the emotional injury suffered by the unlawful loss of one's job, the dubious psychological harm in the instant case is far less deserving of immediate redress.

CONCLUSION
IT IS THEREFORE ORDERED that Plaintiff's Motion For Preliminary Injunction [Doc. # 3] is DENIED. This case is referred to Magistrate Judge Kauffman for further proceedings.
NOTES
[1] One "extraordinary situation" in which harm has been found is a forced early retirement which has a "severe deteriorative impact on the physical and psychological health of older individuals." See EEOC v. Chrysler Corp., 546 F.Supp. 54, 70 (E.D.Mich.1982), aff'd, 733 F.2d 1183 (6th Cir.1984).